**BILLY J. WILLIAMS, OSB #90136**
United States Attorney
District of Oregon
**KATHLEEN L. BICKERS, OSB #85151**
kathleen.bickers@usdoj.gov
Assistant United States Attorney
United States Attorney's Office
District of Oregon
1000 S.W. Third Ave., Suite 600
Portland, Oregon  97204-2902
Telephone:    (503) 727-1060
Facsimile:    (503) 727-1117
Attorneys for United States

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# MEDFORD DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **Civil Case No.: 1:18-cv-1822** |
| Plaintiff, | |
| | **COMPLAINT FOR FORECLOSURE** |
| **v.** | |
| **SCOTT W. CHEYNE,** | |
| Defendant. | |

COMES NOW the UNITED STATES OF AMERICA, by Billy J. Williams, United

States Attorney for the District of Oregon and through Kathleen Bickers, Assistant United States

Attorney for the District of Oregon, for its claim for relief against the above-named Defendant,

alleges as follows:

Page 1 – Complaint for Foreclosure
*United States v. Cheyne,* 1:18-cv-1822

1.      This Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1345, as the

United States is plaintiff.  Venue is proper pursuant to 28 U.S.C. § 1391, as this action is

to foreclose mortgages and security agreements describing real and personal property

located in Klamath County, State of Oregon.

2.      On or about May 24, 2005, Defendant Scott W. Cheyne and Janine M. Cheyne, then

husband and wife, executed and delivered to the United States of America, acting through

its agency, the Farm Service Agency ("FSA") an agency of the United States Department

of Agriculture ("USDA"), a promissory note in the amount of $102,700.00.  A copy of

this note is attached as Exhibit A.  This note was rescheduled by an additional promissory

note dated May 30, 2006, executed by Scott W. Cheyne and Janine M. Cheyne, then

husband and wife, in the amount of $56,975.95.  A copy of this note rescheduling this

debt is attached as Exhibit B.

3.      On or about May 24, 2005, for the purpose of securing the payment of the promissory

notes described in paragraph 2, Defendant Scott W. Cheyne and Janine W. Cheyne, then

husband and wife, executed and delivered to FSA a real estate mortgage describing

certain real property they owned in Klamath County, Oregon.  A copy of this mortgage is

attached as Exhibit C. This real estate mortgage was recorded May 25, 2005, in Volume

M05, Page 38380, in the Official Records of Klamath County, Oregon.

4.      On or about May 30, 2006, for the purpose of further securing payment of the promissory

notes described in paragraph 1, Defendant Scott W. Cheyne and Janine M. Cheyne, then

husband and wife, executed and delivered to FSA a real estate mortgage describing

certain real property they owned in Klamath County, Oregon.  A copy of this mortgage is

attached as Exhibit D. This real estate mortgage was recorded June 2, 2006, in Volume M06, page 11200, in the Official Records of Klamath County, Oregon.

5.    Defendant Scott W. Cheyne and Janine M. Cheyne were divorced by order dated June 15, 2009 in Scott W. Cheyne and Janine M. Cheyne, Circuit Court of the State of Oregon for the County of Klamath, Case No. 08-01214CV.  As part of the Stipulated General Judgment of Dissolution of Marriage, Defendant Scott W. Cheyne was awarded all interest in the subject real property described in the mortgages as detailed in paragraphs 3 and 4.

6.    On August 16, 2010, Janine M. Cheyne was discharged from personal liability for the obligation described in paragraph 1 by order of the United States Bankruptcy Court for the District of Oregon in her Chapter 7 case, *In re Janine M. Cheyne*, Case No. 10-62780-aer7.  FSA is not seeking collection of any debt from Janine M. Cheyne.

7.    On October 20, 2011, Defendant Scott W. Cheyne filed a Chapter 13 petition in the United States Bankruptcy Court for the District of Oregon, *In re Scott William Cheyne*, Case No. 11-65174-fra13.  Pursuant to his Chapter 13 plan, Defendant Scott W. Cheyne cured his default on his debt to FSA pursuant to 11 U.S.C. §1322(b)(5), which allows a debtor to cure an arrearage while maintaining the regular payments on the debt where the last payment is after the final date of the plan.  Defendant Scott W. Cheyne received a Chapter 13 discharge pursuant to 11 U.S.C. § 1328(a).  Accordingly, Defendant Scott W. Cheyne remains personally liable for his debt to FSA.

8.    Defendant Scott W. Cheyne is delinquent in payment of the indebtedness pursuant to the notes described in paragraph 2, and secured by the mortgages described in paragraphs 3 and 4.  In accordance with the provisions of the promissory notes and mortgages

described above, and after taking all actions required under applicable regulations, on March 11, 2015, FSA accelerated the entire indebtedness owing pursuant to the terms of the promissory notes, and declared all immediately debt immediately due and payable. Defendant Scott W. Cheyne is indebted to FSA in the amount of $38,563.07 principal, and $14,990.44 interest computed through March 8, 2018, with interest accruing thereafter at the daily rate of $4.4902.

9.      The interests of Defendant in the real property described in the mortgages are inferior to the interest held by FSA.

WHEREFORE, the United States of America requests judgment against Defendant as follows:

1.      Against Defendant Scott W. Cheyne in the amount of $53,553.51 ($38,563.07 principal and $14,990.44) with interest to accrue at the rate of $4.4902 from March 8, 2018, to the date of judgment, and interest from the date of judgment at the legal rate until paid in full, for costs of suit, and other proper relief.

2.      Directing that the mortgages described in paragraphs 3 and 4 be foreclosed and the real property be sold by the United States Marshal for the District of Oregon in the manner provided by law; that the parties hereto be allowed to bid at the said foreclosure sale; that the purchaser at said sale shall be issued a Certificate of Sale of Real Property, be immediately let into possession of said property, and be entitled to such remedies as are available at law to secure possession, including a writ of assistance, if defendant, or any of them, or any other party or person shall refuse to surrender possession to the purchaser immediately on the purchaser's demand for possession; and that at the termination of the redemption period the Marshal issue his Deed.

3.      That proceeds realized from the sale of the real property aforesaid be applied as follows: first, in payment of attorneys' fees, costs, and expenses of this suit; and second, in payment of the judgment granted the United States of America.

4.      If the proceeds from the sale of the real property described in the mortgage are insufficient to pay the United States of America in full, that a deficiency judgment be entered against Scott W. Cheyne, and that the United States of America may collect from any other nonexempt assets belonging to Scott W. Cheyne.

5.      Decreeing that the Defendant and all persons claiming by, through or under them be forever barred and foreclosed from asserting any right, title, or interest in and to the said mortgaged property, except the right of redemption provided by law.

6.      For such other and further relief as the Court may deem fit and proper.

DATED this 15th day of October, 2018.

BILLY J. WILLIAMS
United States Attorney
District of Oregon


*/s Kathleen L. Bickers*_____
KATHLEEN L. BICKERS
Assistant United States Attorney
Attorneys for Plaintiff

RESCHEDULED
NOT PAID IN FULL

ORIGINAL

REPRODUCE LOCALLY. Include form number and date on all reproductions.

**FSA-1940-17**
(10-26-99)

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

### PROMISSORY NOTE

**8. KIND OF LOAN**

Type: OL

- [X] Regular
- [ ] Limited Resource

Pursuant to:
- [X] Consolidated Farm & Rural Development Act
- [ ] Emergency Agricultural Credit Adjustment Act of 1978

| 1. Name | |
|---|---|
| CHEYNE, SCOTT W. AND JANINE M. | |

| 2. State | 3. County |
|---|---|
| OREGON | KLAMATH |

| 4. Case Number | 5. Date |
|---|---|
| 43-18-541 94 3899 | MAY 24, 2005 |

| 6. Fund Code | 7. Loan Number |
|---|---|
| 44 | 01 |

**9. ACTION REQUIRING NOTE**

- [X] Initial loan
- [ ] Subsequent loan
- [ ] Consolidated & subsequent loan
- [ ] Consolidation
- [ ] Conservation easement
- [ ] Rescheduling
- [ ] Reamortization
- [ ] Credit sale
- [ ] Deferred payments
- [ ] Debt write down

FOR VALUE RECEIVED, the undersigned Borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture, (herein called the "Government"), or its assigns, at its office in 2316 SOUTH 6TH STREET, SUITE C, KLAMATH FALLS, OREGON   97601

_____, or at such other place as the Government may later designate in writing, the principal sum of

ONE HUNDRED TWO THOUSAND SEVEN HUNDRED AND NO/100 _____ dollars

($ 102,700.00 ), plus interest on the unpaid principal balance at the **RATE** of

FOUR AND ONE-QUARTER PERCENT _____ percent ( 4.2500 %) per annum and

ZERO _____ dollars ($ -0- )

of Noncapitalized interest. If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farm Service Agency, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address. The new interest rate shall not exceed the highest rate established in regulations of the Farm Service Agency for the type of loan indicated above.

Principal and interest shall be paid in 2 installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

| | | |
|---|---|---|
| $ 2656.00 on 01/01/06 | ; $ N/A on _____ ; |
| $ N/A on _____ | ; $ N/A on _____ ; |
| $ N/A on _____ | ; $ N/A on _____ ; |
| $ N/A on _____ | ; $ N/A on _____ ; |
| $ N/A on _____ | ; $ N/A on _____ ; |
| $ N/A on _____ | ; $ N/A on _____ ; |

and $ N/A thereafter on N/A _____ of each N/A _____ until the principal and interest are fully paid except that the final installment of the entire debtedness evidenced hereby, if not sooner paid, shall be due and payable 1 years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note. Borrower authorized the Government to enter the amount(s) and date(s) of such advance(s) in the Record of Advances.

*Position 2*

**FSA-1940-17** (10-26-99)                                                                                   Page 2 of 3

For each rescheduled, reamortized or consolidated note for applications for Primary and Preservation Loan Service Programs received prior to November 28, 1990, interest accrued to the date of this instrument which is more than 90 days overdue shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument.  For applications for Primary and Preservation Loan Service Programs received on or after November 28, 1990, all unpaid interest accrued to the date of this instrument shall be added to the principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to a portion of any interest which accrues during the deferral period, second to accrued interest to the date of the payment on the note account and then to the principal.  Nonprogram loans are not eligible for deferral.

Prepayments of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments, as defined in the regulations (7 CFR § 1951.8) of the Farm Service Agency according to the source of funds involved, shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled in this note.

If the Government at any time assigns this note and insures the payment of it, Borrower shall continue to make payments to the Government as collection agent for the holder.  While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis.  The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder.  The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government.  Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Debt write down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block in Item 9 above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s) (new terms):

| FUND CODE/ LOAN NO. | FACE AMOUNT | INTEREST RATE | DATE *(include year)* | ORIGINAL BORROWER | LAST INSTALL. DUE *(include year)* |
|---|---|---|---|---|---|
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing.  These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT:** If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock.  The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a non-program loan.

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, and marital or family status.  (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).  To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 1400 Independence Avenue, SW, Washington, D.C. 20250-9410 or call (202) 720-5964 (voice or TDD).  USDA is an equal opportunity provider and employer.*

**FSA-1940-17** (10-26-99)                                                                                                   Page 3 of 3

**HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT:** Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.  If (1) the term of the loan exceeds January 1, 1990, but not January 1, 1995, and (2) Borrower intends to produce an agricultural commodity on highly erodible land that is exempt from the restrictions of Exhibit M until either January 1, 1990, or two years after the Natural Resources Conservation Service (NRCS) has completed a soil survey for the Borrower's land, whichever is later, the Borrower further agrees that, prior to the loss of the exemption from the highly erodible land conservation restrictions found in 7 CFR Part 12, Borrower must demonstrate that Borrower is actively applying on that land which has been determined to be highly erodible, a conservation plan approved by the NRCS or the appropriate conservation district in accordance with NRCS's requirements.  Furthermore, if the term of the loan exceeds January 1, 1995, Borrower further agrees that Borrower must demonstrate prior to January 1, 1995, that any production of an agricultural commodity on highly erodible land after that date will be done in compliance with a conservation system approved by NRCS or the appropriate conservation district in accordance with NRCS's requirements.

**DEFAULT:** Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note.  **UPON ANY SUCH DEFAULT,** the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above.  This Note shall be subject to the present regulations of the Farm Service Agency and to its future regulations not inconsistent with the express provisions of this note.

Presentment, protest, and notice are waived.

(SEAL)

_____
SCOTT W. CHEYNE                                         *(Borrower)*

_____
JANINE M. CHEYNE

PO BOX 448
_____

MIDLAND, OR   97634
_____

### RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|--------|------|--------|------|--------|------|
| $ 15,571.00 | 5/24/05 | $ 1423.50 | 9/6/05 | $ | |
| $ 16,813.00 | 5/26/05 | $ 17,887.00 | 10/6/05 | $ | |
| $ 28,142.00 | 6/27/05 | $ | | $ | |
| $ 12,864.00 | 8/5/05 | $ | | $ | |
| | | | TOTAL | $ 102,900 | |

ORIGINAL

REPRODUCE LOCALLY. Include form number and date on all reproductions.

**FSA-1940-17**
(10-26-99)

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

**PROMISSORY NOTE**

| 8. KIND OF LOAN |
|---|
| Type: OL    [✓] Regular |
| [ ] Limited Resource |
| Pursuant to: |
| [✓] Consolidated Farm & Rural Development Act |
| [ ] Emergency Agricultural Credit Adjustment Act of 1978 |

| 9. ACTION REQUIRING NOTE | |
|---|---|
| [ ] Initial loan | [✓] Rescheduling |
| [ ] Subsequent loan | [ ] Reamortization |
| [ ] Consolidated & subsequent loan | [ ] Credit sale |
| [ ] Consolidation | [ ] Deferred payments |
| [ ] Conservation easement | [ ] Debt write down |

1. Name    CHEYNE, Scott W. and Janine M.

2. State    OREGON

3. County    KLAMATH

4. Case Number    43-18-541 94 3899

5. Date    MAY 30, 2006

6. Fund Code    44

7. Loan Number    03

FOR VALUE RECEIVED, the undersigned Borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture, (herein called the "Government"), or its assigns, at its office in 2316 SOUTH 6TH STREET, SUITE C, KLAMATH FALLS, OR 97601

_____, or at such other place as the Government may later designate in writing, the principal sum of

FIFTY-SIX THOUSAND NINE HUNDRED SEVENTY-FIVE DOLLARS AND 95/100 _____ dollars

($ 56,975.95 _____ ), plus interest on the unpaid principal balance at the **RATE** of

FOUR AND ONE-QUARTER _____ percent ( 4.25 %) per annum and

ZERO _____ dollars ($ -00- _____ )

of Noncapitalized interest. If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farm Service Agency, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address. The new interest rate shall not exceed the highest rate established in regulations of the Farm Service Agency for the type of loan indicated above.

Principal and interest shall be paid in 16 installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

$5,216.00 on 05/30/2007 ; $ 5,216.00 on 05/30/2008 ;

$5,216.00 on 05/30/2009 ; $ 5,216.00 on 05/30/2010 ;

$ N/A on _____ ; $ N/A on _____ ;

$ N/A on _____ ; $ N/A on _____ ;

$ N/A on _____ ; $ N/A on _____ ;

$ N/A on _____ ; $ N/A on _____ ;

and $ 5,216.00 thereafter on MAY 30TH of each YEAR until the principal and interest are fully paid except that the final installment of the entire debtedness evidenced hereby, if not sooner paid, shall be due and payable 15 years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note. Borrower authorized the Government to enter the amount(s) and date(s) of such advance(s) in the Record of Advances.

*Position 2*

*Filed bankruptcy*

**FSA-1940-17** (10-26-99)                                                                 Page 2 of 3

For each rescheduled, reamortized or consolidated note for applications for Primary and Preservation Loan Service Programs received prior to November 28, 1990, interest accrued to the date of this instrument which is more than 90 days overdue shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument.  For applications for Primary and Preservation Loan Service Programs received on or after November 28, 1990, all unpaid interest accrued to the date of this instrument shall be added to the principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to a portion of any interest which accrues during the deferral period, second to accrued interest to the date of the payment on the note account and then to the principal.  Nonprogram loans are not eligible for deferral.

Prepayments of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower.  Refunds and extra payments, as defined in the regulations (7 CFR § 1951.8) of the Farm Service Agency according to the source of funds involved, shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled in this note.

If the Government at any time assigns this note and insures the payment of it, Borrower shall continue to make payments to the Government as collection agent for the holder.  While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis.  The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder.  The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and shall be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government.  Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Debt write down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block in Item 9 above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s) (new terms):

| FUND CODE/ LOAN NO. | FACE AMOUNT | INTEREST RATE | DATE *(include year)* | ORIGINAL BORROWER | LAST INSTALL. DUE *(include year)* |
|---|---|---|---|---|---|
| 44-01 | $ 102,700.00 | 4.25 % | 05/24/2005 | SCOTT W. CHEYNE | 05/24/2006 |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing.  These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT:** If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock.  The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a non-program loan.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, and marital or family status.  (Not all prohibited bases apply to all programs.)  Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).  To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 1400 Independence Avenue, SW, Washington, D.C. 20250-9410 or call (202) 720-5964 (voice or TDD).  USDA is an equal opportunity provider and employer.

**FSA-1940-17** (10-26-99)                                                                                   Page 3 of 3

   **HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT:** Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.  If (1) the term of the loan exceeds January 1, 1990, but not January 1, 1995, or (2) Borrower intends to produce an agricultural commodity on highly erodible land that is exempt from the restrictions of Exhibit M until either January 1, 1990, or two years after the Natural Resources Conservation Service (NRCS) has completed a soil survey for the Borrower's land, whichever is later, the Borrower further agrees that, prior to the loss of the exemption from the highly erodible land conservation restrictions found in 7 CFR Part 12, Borrower must demonstrate that Borrower is actively applying on that land which has been determined to be highly erodible, a conservation plan approved by the NRCS or the appropriate conservation district in accordance with NRCS's requirements.  Furthermore, if the term of the loan exceeds January 1, 1995, Borrower further agrees that Borrower must demonstrate prior to January 1, 1995, that any production of an agricultural commodity on highly erodible land after that date will be done in compliance with a conservation system approved by NRCS or the appropriate conservation district in accordance with NRCS's requirements.

   **DEFAULT:** Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note.  **UPON ANY SUCH DEFAULT,** the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

   This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above.  This Note shall be subject to the present regulations of the Farm Service Agency and to its future regulations not inconsistent with the express provisions of this note.


Presentment, protest, and notice are waived.


(SEAL)

                                        SCOTT W., CHEYNE

                                        JANINE M. CHEYNE                                    *(Borrower)*


                                        PO BOX 448
                                        MIDLAND, OR   97634


### RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|--------|------|--------|------|--------|------|
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| | | | TOTAL | $ | |

Vol __M05__ Page __38380__

**USDA-FmHA**
Form FmHA 1927-1 OR
(Rev. 9-92)

*Position 5*

State of Oregon, County of Klamath
Recorded 05/25/05 _2:07_ m
Vol M05 Pg _38380 - 84_
Linda Smith, County Clerk
Fee $ _41.00_    # of Pgs __5__

## REAL ESTATE MORTGAGE FOR OREGON

'05 MAY 25 PM2:07

THIS MORTGAGE is made and entered into by   SCOTT W. CHEYNE and JANINE W. CHEYNE,

_____ husband and wife _____

residing in __KLAMATH_____ County, Oregon, whose post office

address is _____ PO BOX 448, MIDLAND _____, Oregon _97634_, herein

called "Borrower," and the United States of America, acting through the Farmers Home Administration, United

States Department of Agriculture, whose mailing address is _2316 S 6th Street, Suite C, Klamath Falls,_

_____, Oregon _97601_, herein called the "Government," and:,

WHEREAS Borrower is indebted to the Government, as evidenced by one or more promissory note(s) or assumption agreement(s) or any shared appreciation or recapture agreement, herein called "note," which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| *Date of Instrument* | *Principal Amount* | *Due Date of Final Installment* |
|---|---|---|
| 05/24/2005 | $102,700.00 | 05/24/2006 |

**RESCHEDULED
NOT PAID IN FULL**

(The interest rate for limited resource farm ownership or limited resource operating loan(s) secured by this instrument may be increased as provided in the Farmers Home Administration regulations and the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the payment thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949, or any other statutes administered by the Farmers Home Administration;

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower;

And this instrument also secures the recapture of any deferred principal and interest or of any interest credit and subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. §§ 1472 (g) or 1490a, respectively, or any amount due under any Shared Appreciation/Recapture Agreement entered into pursuant to 7 U.S.C. § 2001.

NOW THEREFORE, in consideration of the loan(s) and (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance contract by reason of any default by the Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower does hereby grant, bargain, sell, convey, mortgage and assign with general warranty unto the Government the following property situated in the State

of Oregon, County(ies) of _____ KLAMATH _____

_____ :

FmHA 1927-1 OR (Rev. 9-92)

See attached Exhibit "A" Legal Descriptions

together with all rights (including the right to mining products, gravel, oil, gas, coal or other minerals), interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom (including any Government payments contingent on an agreement to restrict the use of the land), all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to, irrigation systems, including pumps, motors, electrical panels, pipe, sprinklers, and other accessories pertaining thereto; milking, milk handling, and milk storage systems, and other accessories pertaining thereto; manure handling systems; livestock feeding systems; ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, whether or not attached to the real estate; all water, water rights, water certificates, water permits, water allotments, and water stock pertaining thereto, no matter how evidenced; and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein-all of which are herein called "the property";

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

IN ADDITION to its other rights, the Government is hereby granted a security interest in the above-described property pursuant to ORS 79.1010 - 79.5070.

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors and assigns WARRANTS THE TITLE to the property to the Government against all lawful claims and demands whatsoever except any liens, encumbrances, easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1)    To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2)    To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3)    If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4)    Whether or not the note is insured by the Government, the Government may at any time pay any other amounts including advance for payment of prior and/or junior liens, required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for Borrower's account. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5)    All advances by the Government, including advance for payment of prior and/or junior liens, in addition to any advances required by the terms of the note, as described by this instrument, with interest shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6)    To use the loan evidenced by the note solely for purposes authorized by the Government.

(7)    To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights, and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8)    To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9)    To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10)    To comply with all laws, ordinances, and regulations affecting the property.

(11)    To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, or conveying the property.

(12)    Except as otherwise provided in the Farmers Home Administration regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest

38381

38382

in or to the lien or any benefits hereof. All rents, profits, and income, including any amounts arising out of an agreement by which the Borrower substantially reduces its use of the property in return for payments, are hereby assigned to the Government for the purpose of discharging the debt hereby secured. Permission is hereby given to the Borrower, so long as no default exists hereunder, to collect such rents, profits and income for use in accordance with the provisions of the borrower's agreement with Farmers Home Administration and the applicable regulations.

(13)  At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14)  This instrument secures to the Government the repayment of the debt evidenced by the note, including all adjustments, renewals, extensions or modifications in the interest rate, payment terms or balance due on the loan; the payment of all other sums, with interest, advanced under paragraph 4; and the performance or Borrower's covenants and agreements under this instrument and the note. The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government--whether once or often--in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15)  If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Governments's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16)  Default hereunder shall constitute default under any other real estate or crop or chattel security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17)  SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should any one of the parties named as Borrower die or be declared an incompetent, a bankrupt, or an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur any legal reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

(18)  The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19)  Borrower agrees that the Government will not be bound by any present or future laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgement or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy.

(20)  If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, age, handicap, or familial status, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin. age, handicap, or familial status.

(21)  Borrower further agrees that the loan(s) secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.

(22)  This instrument shall be subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof.

(23)  Notices given hereunder shall be sent by certified mail, unless otherwise required by law, addressed, unless and until some other address is designated in a notice so given, in the case of the Government to Farmers Home Administration, United States Department of Agriculture, at the mailing address mentioned above, and in the case of Borrower at the address shown in the Farmers Home Administration Finance Office records (which normally will be the same as the post office address shown above).

(24)  If any provision of this instrument or application hereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

EXECUTED this _____ 24th _____ date of ___ May _____, 19 2005

Partnership or Corporation                          Individual(s)       38383

_____
(Name of Borrower)

By: _____     _____
By: _____     SCOTT W. CHEYNE
By: _____     _____
Attest: _____     JANINE M. CHEYNE

[Corporate Seal]

## ACKNOWLEDGMENT FOR INDIVIDUALS

STATE OF OREGON        } ss:
COUNTY OF KLAMATH

The foregoing instrument was acknowledged before me this ___ 24th ___ day of ___ May ___,

19 2005 by SCOTT W. CHEYNE and JANINE M. CHEYNE, husband and wife
(Name of persons acknowledging)

_____
Rowena A. Chase
Notary Public of and for the State of Oregon

OFFICIAL SEAL
ROWENA A. CHASE
NOTARY PUBLIC-OREGON
COMMISSION NO. 389571
MY COMMISSION EXPIRES MAR. 17, 2009

My Commission expires 3-17-2009

## ACKNOWLEDGMENT FOR A PARTNERSHIP

STATE OF OREGON        } ss:
COUNTY OF _____

The foregoing instrument was acknowledged before me this _____ day of _____,

19 ____ by _____ on behalf of _____ a partnership.
(Names of acknowledging partners)                (Name of partnership)

[Notary Seal]        _____
Notary Public of and for the State of Oregon

My Commission expires _____

## ACKNOWLEDGMENT FOR A CORPORATION

STATE OF OREGON        } ss:
COUNTY OF _____

The foregoing instrument was acknowledged before me this _____ day of _____,

19 ____ by _____ , _____
(Name of Corporate Officer)                (Title of Corporate Officer)

of _____ , a _____ corporation, on behalf of the corporation.
(Name of Corporation)                (State of Incorporation)

[Notary Seal]        _____
Notary Public of and for the State of Oregon

My Commission expires _____

38384

Continuation and became a part of USDA-FmHA 1927-1 OR
CHEYNE, Scott W. and Janine M.

EXHIBIT "A"
LEGAL DESCRIPTION

A  parcel of land situate in Section 27, Township 40 South, Range 9 East of the
Willamette Meridian, Klamath County, Oregon, being more particularly described as
follows:

Beginning at the ¼ Section corner common to Sections 22 and 27, Township 40 South,
Range 9 East of the Willamette Meridian, thence South 0 degrees 31' 15" East along the
North-South centerline of said Section 27, 3421.73 feet to a point; thence South 38
degrees 01' West 431.2 feet to a point on the Northerly right of way line of the Lower
Klamath Lake Road, as the same is presently located and constructed, thence
Northwesterly along said Northerly right of way line 1830 feet, more or less, to a point on
the East-West centerline of said Section 27; thence North 89 degrees 32'50" East along
said East-West centerline 414.50 feet to the center West 1/16 corner of said Section 27;
thence North 0 degrees 21'10" West 2634.13 feet to the West 1/16 corner common to
Sections 22 and 27; thence North 89 degrees 51'30" East, 1301.60 feet to the point of
beginning.

_____
SCOTT W. CHEYNE, Borrower

_____
JANINE M. CHEYNE, Borrower

MC 11200
Klamath County, Oregon
06/02/2006 09:37:41 AM
Pages 5    Fee: $41.00

Position 5

**FSA 1927-1M OR**
(05-12-05)

UNITED STATES DEPARTMENT OF AGRICULTURE
Farm Service Agency

## MORTGAGE FOR OREGON

*\* Used old form
new version
was not
available until
6-10-2005
RC*

RECEIVED

JUN - 7 2006

USDA
Klamath County FSA

After recording, return this document to:

USDA/Farm Service Agency
2316 South 6th Street
Suite C
Klamath Falls, OR  97601

This Space Reserved For County Filing Officer Use Only

---

THIS MORTGAGE ("instrument") is made on    May 30    , 20   06  . The mortgagor is Scott W. Cheyne
and Janine M. Cheyne, husband and wife
                                    ("Borrower") whose mailing address is    PO Box 448, Midland, OR  97634
                                                        . This instrument is given to the United States of America,
acting through the Farm Service Agency, United States Department of Agriculture ("Government") located at   2316 South 6th Street,
Suite C, Klamath Falls, OR  97601                                                                        .

This instrument secures the following promissory notes, assumption agreements, and/or shared appreciation agreements (collectively called "note"),
which have been executed or assumed by Borrower unless otherwise noted, are payable to the Government, and authorize acceleration of the entire
debt upon any default:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| 05/30/2006 | $56,975.95 | 4.250% | May 30, 2021 |
| 05/30/2006 | $53,200.00 | 5.125% | May 30, 2007 |

(The interest rate for any limited resource farm ownership or limited resource operating loans secured by this instrument may be increased as
provided in Government regulations and the note.)

By execution of this instrument, Borrower acknowledges receipt of all of the proceeds of the loan or loans evidenced by the above note.

This instrument secures to the Government:  (1) payment of the note and all extensions, renewals, and modifications thereof; (2) recapture of any
amount due under any Shared Appreciation Agreement entered into pursuant to 7 U.S.C. § 2001; (3) payment of all advances and expenditures, with
interest, made by the Government; and  (4) the obligations and covenants of Borrower set forth in this instrument, the note, and any other loan
agreements.

In consideration of any loan made by the Government under the Consolidated Farm and Rural Development Act, 7 U.S.C. § 1921 et seq. as
evidenced by the note, Borrower irrevocably mortgages, grants and conveys to Government the following described property situated in the State of
Oregon, County or Counties of    Klamath                                                                        :

A Parcel of land situate in Section 27, Township 40 South, Range 9 East of the Willamette Meridian,
Klamath County, Oregon, being more particularly described as follows:

Beginning at the 1/4 Section corner common to Sections 22 and 27, Township 40 South, Range 9 East
of the Willamette Meridian, thence South 0 degrees 31'15" East along the North-South centerline of
said Section 27, 3421.73 feet to a point; thence South 38 degrees 01' West 431.2 feet to a point on
the Northerly right of way line of the Lower Klamath Lake Road, as the same is presently located
and constructed, thence Northwesterly along said Northerly right of way line 1830 feet, more or

Initial _____ date 5-30 06

FSA-1927-1M OR (05-12-05) *Page 1 of 6*

less, to a point on the Wast-West centerline of said Section 27; thence North 89 degrees 32' 50" East along said East-West centerline 414.50 feet to the center West 1/16 corner of said Section 27; thence North 0 degrees 21'10" West 2634.13 feet to the West 1/16 corner common to Sections 22 and 27; thence North 89 degrees 51'30" feet East, 1301.60 feet to the point of beginning.

**(For Additional Legal Description, See Exhibit "A" Attached)**

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, fixtures, hereditaments, appurtenances, and improvements now or later attached thereto (including, but not limited to, irrigations systems, including pumps, motors, electrical panels, pipe, sprinklers, and other accessories pertaining thereto; seed cleaning and storage systems, including cleaners, elevators, pipe, scales, baggers, fans, motors, electrical panels, and other accessories pertaining thereto; milking, milk handling, and milk storage systems, and other accessories pertaining thereto; manure handling systems; livestock feeding systems; whether or not attached to the real estate), the rents, issues and profits thereof, revenues and income therefrom, all water, water rights, water certificates, water permits, water allotments, and water stock pertaining thereto no matter how evidenced, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, or condemnation of any part thereof or interest therein (collectively called "the property"). This instrument constitutes a security agreement and financing statement under the Uniform Commercial Code and creates a security interest in all items which may be deemed to be personal property, including but not limited to proceeds and accessions, that are now or hereafter included in, affixed, or attached to "the property."

Borrower COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the property and that the property is unencumbered, except for encumbrances of record. Borrower warrants and will defend the title to the property against all claims and demands, subject to any encumbrances of record.

This instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform mortgage covering real property.

UNIFORM COVENANTS. Borrower COVENANTS AND AGREES as follows:

1.   **Payment**. Borrower shall pay promptly when due any indebtedness to the Government secured by this instrument.
2.   **Fees**. Borrower shall pay to the Government such fees and other charges that may now or later be required by Government regulations.
3.   **Application of payments.** Unless applicable law or Government's regulations provide otherwise all payments received by the Government shall be applied in the following order of priority:  (a) to advances made under this instrument; (b) to accrued interest due under the note; (c) to principal due under the note; (d) to late charges and other fees and charges.
4.   **Taxes, liens, etc.** Borrower shall pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property and promptly deliver to the Government without demand receipts evidencing such payments.
5.   **Assignment.** Borrower grants and assigns as additional security all the right, title and interest in:  (a) the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or taking by eminent domain or otherwise of any part of the property, or for conveyance in lieu of condemnation; (b) all bonuses, rentals, royalties, damages, delay rentals and income that may be due or become due and payable to the Borrower or Borrower's assigns under any existing or future oil, gas, mining or mineral lease covering any portion of the property; and  (c) all rents, issues, profits, income and receipts from the property and from all existing or future leases, subleases, licenses, guaranties and any other agreements for the use and occupancy of any portion of the property, including any extensions, renewals, modifications or substitutions of such agreements. Borrower warrants the validity and enforceability of this assignment.

Borrower authorizes and directs payment of such money to the Government until the debt secured by this instrument is paid in full. Such money may, at the option of the Government, be applied on the debt whether due or not. The Government shall not be obligated to collect such money, but shall be responsible only for amounts received by the Government. In the event any item so assigned is determined to be personal property, this instrument will also be regarded as a security agreement.

Borrower will promptly provide the Government with copies of all existing and future leases. Borrower warrants that as of the date of executing this instrument no default exists under existing leases. Borrower agrees to maintain, and to require the tenants to comply with, the leases and any applicable law. Borrower will obtain the Government's written authorization before Borrower consents to sublet, modify, cancel, or otherwise alter the leases, or to assign, compromise, or encumber the leases or any future rents. Borrower will hold the Government harmless and indemnify the Government for any and all liability, loss or damage that the Government may incur as a consequence of this assignment.

Initial _____ date _5-30 6_

FSA-1927-1M OR (05-12-05) *Page 2 of 6*

6.    **Insurance.**  Borrower shall keep the property insured as required by and under insurance policies approved by the Government and, at its request, deliver such policies to the Government.  If property is located in a designated flood hazard area, Borrower also shall keep property insured as required by 42 U.S.C. § 4001 et seq. and Government regulations.  All insurance policies and renewals shall include a standard mortgagee clause.

7.    **Advances by Government.**  The Government may at any time pay any other amounts required by this instrument to be paid by Borrower and not paid by Borrower when due, as well as any cost for the preservation, protection, or enforcement of this lien, as advances for the account of Borrower.  Advances shall include, but not be limited to, advances for payments of real property taxes, special assessments, prior liens, hazard insurance premiums, and costs of repair, maintenance, and improvements.  All such advances shall bear interest at the same rate as the note which has the highest interest rate.  All such advances, with interest, shall be immediately due and payable by Borrower to the Government without demand.  No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay.  Any payment made by Borrower may be applied on the note or any secured debt to the Government, in any order the Government determines.

8.    **Protection of lien.**  Borrower shall pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and its priority and the enforcement or compliance with this instrument and the note.  Such expenses include, but are not limited to: costs of evidence of title to, and survey of, the property, costs of recording this and other instruments; attorneys' fees, trustees' fees; court costs, and expenses of advertising, selling, and conveying the property.

9.    **Authorized purposes.**  Borrower shall use the loan evidenced by the note solely for purposes authorized by the Government.

10.    **Repair and operation of property.**  Borrower shall:  (a) maintain improvements in good repair;  (b) make repairs required by the Government;  (c) comply with all farm conservation practices and farm management plans required by the Government; and  (d) operate the property in a good and husbandlike manner.  Borrower shall not  (e) abandon the property;  (f) cause or permit waste, lessening or impairment of the property; or  (g) cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals without the written consent of the Government, except as necessary for ordinary domestic purposes.

11.    **Legal compliance.**  Borrower shall comply with all laws, ordinances, and regulations affecting the property.

12.    **Transfer or encumbrance of property.**  Except as provided by Government regulations, the Borrower shall not lease, assign, sell, transfer, or encumber, voluntarily or otherwise, any of the property without the written consent of the Government.  The Government may grant consents, partial releases, subordinations, and satisfactions in accordance with Government regulations.

13.    **Inspection.**  At all reasonable times the Government may inspect the property to ascertain whether the covenants and agreements contained in this instrument are being performed.

14.    **Hazardous substances.**  Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the property.  The preceding sentence shall not apply to the presence, use, or storage on the property of small quantities of hazardous substances that are generally recognized to be appropriate to normal use and maintenance of the property.  Borrower covenants that Borrower has made full disclosure of any such known, existing hazardous conditions affecting the property.  Borrower shall not do, nor allow anyone else to do, anything affecting the property that is in violation of any federal, state, or local environmental law or regulation.  Borrower shall promptly give the Government written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge.  If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations.  As used in this paragraph, "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials.  As used in this paragraph, "environmental law" means Federal laws and regulations and laws and regulations of the jurisdiction where the property is located that relate to health, safety or environmental protection.

15.    **Adjustment; release; waiver; forbearance.**  In accordance with Government regulations, the Government may (a) adjust the interest rate, payment, terms or balance due on the loan,  (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance,  (c) extend or defer the maturity of, and renew and reschedule the payments on the note,  (d) release any party who is liable under the note from liability to the Government,  (e) release portions of the property and subordinate its lien, and  (f) waive any other of its rights under this instrument.  Any and all of this can and will be done without affecting the lien or the priority of this instrument or Borrower's liability to the Government for payment of the note secured by this instrument unless the Government provides otherwise in writing.  HOWEVER, any forbearance by the Government - whether once or often - in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

16.    **Graduation.**  If the Government determines that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such a loan in sufficient amount to pay the note secured by this instrument and to pay for stock necessary to be purchased in a cooperative lending agency in connection with such loan.

17.    **Forfeiture.**  Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in the Government's good faith judgment could result in forfeiture of the property or otherwise materially impair the lien created by this  instrument or the Government's security interest.  Borrower may cure such default by causing the action or proceeding to be dismissed with a ruling that precludes forfeiture of the Borrower's interest in the property or other material impairment of the lien created by this security instrument or the Government's security interest.

18.    **False statement.**  Borrower also shall be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to the Government (or failed to provide the Government with any material information) in connection with the loan evidenced by the note.

19.    **Cross Collateralization.**  Default under this instrument shall constitute default under any other security instrument held by the Government and executed or assumed by Borrower.  Default under any other such security instrument shall constitute default under this instrument.

20.    **Highly erodible land; wetlands.**  Any loan secured by this instrument will be in default if Borrower uses any loan proceeds for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 C.F.R. part 1940, subpart G, or any successor Government regulation.

Initial _Oel_ date _5  30  -0v_

FSA-1927-1M OR (05-12-05) *Page 3 of 6*

21. **Non-discrimination.** If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, disability, familial status or age, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, disability, familial status or age.

22. **Notices.** Notices given under this instrument shall be sent by certified mail unless otherwise required by law.  Such notices shall be addressed, unless and until some other address is designated in a notice, in the case of the Government to the State Executive Director of the Farm Service Agency at the mailing address shown above, and in the case of Borrower at the address shown in the Government's Finance Office records (which normally will be the same as the mailing address shown above).

23. **Governing law; severability.** This instrument shall be governed by Federal law.  If any provision of this instrument or the note or its application to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of this instrument or the note which can be given effect without the invalid provision or application.  The provisions of this instrument are severable.  This instrument shall be subject to the present regulations of the Government, and to its future regulations not inconsistent with the express provisions hereof.  All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

24. **Successors and assigns; joint and several covenants.** The covenants and agreements of this instrument shall bind and benefit the successors and assigns of Government and Borrower.  Borrower's covenants and agreements shall be joint and several.  Any Borrower who co-signs this instrument but does not execute the Note: (a) is co-signing this instrument only to mortgage, grant and convey that Borrower's interest in the property under this instrument;  (b) is not personally obligated to pay the sums secured by this instrument; and  (c) agrees that the Government and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this instrument or the note without that Borrower's consent.

25. **No merger.** If this instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  If Borrower acquires fee title to the property, the leasehold and the fee title shall not merge unless the Government agrees to the merger in writing.  If the property is conveyed to the Government, title shall not merge (unless the Government elects otherwise) and the lien provided under this instrument shall not be affected by such conveyance.

26. **Time is of the essence.** Time is of the essence in the Borrower's performance of all duties and obligations under this instrument.

NON-UNIFORM COVENANTS.  Borrower further COVENANTS AND AGREES as follows:

27. **Default; death; incompetence; bankruptcy.** Should default occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the Borrower die or be declared incompetent, or should the Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may:  (a) declare the entire amount unpaid under the note and any debt to the Government hereby secured immediately due and payable,  (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of, and take possession of, operate or rent the property,  (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases,  (d) foreclose this instrument and sell the property as prescribed by law; and (e) enforce any and all other rights and remedies provided herein or by present or future law.

28. **State law.** Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of any action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest it may charge, as a condition of approving a transfer of the property to a new Borrower.  Borrower expressly waives the benefit of any such State laws.

29. **Assignment of leases and rents.** Borrower agrees that the assignment of leases and rents in this instrument is immediately effective on the recording of this instrument.  Upon default, the Borrower will receive any rents in trust for the Government, and Borrower will not commingle the rents with any other funds.  Any amounts collected shall be applied at the Government's discretion first to costs of managing, protecting and preserving the property, and to any other necessary related expenses.  Any remaining amounts shall be applied to reduce the debt evidenced by the note(s).  Borrower agrees that the Government may demand that Borrower and Borrower's tenants pay all rents due or to become due directly to the Government if the Borrower defaults and the Government notifies Borrower of the default.  Upon such notice, Borrower will endorse and deliver to the Government any payments of rents.  If the Borrower becomes subject to a bankruptcy, then Borrower agrees that the Government is entitled to receive relief from the automatic stay in bankruptcy for the purpose of enforcing this assignment.

30. **Application of foreclosure proceeds.** The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with this instrument, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all other debt to the Government secured by this instrument, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other debt of Borrower to the Government and (f) any balance to Borrower.  If the Government is the successful bidder at foreclosure or other sale of all or any part of the property, the Government may pay its share of the purchase price by crediting such amount on any debts of Borrower owing to the Government, in the order prescribed above.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this instrument and in any rider executed by Borrower and recorded with this instrument.

For Entities:                                                                For Individuals:

_____
(Name of Borrower)

By: _____ (SEAL)          _____ (SEAL)
                                                                                    SCOTT W. CHEYNE

By: _____ (SEAL)          _____ (SEAL)
                                                                                    JANINE M. CHEYNE

By: _____ (SEAL)          _____ (SEAL)

Attest: _____ (SEAL)          _____ (SEAL)

                    [Entity Seal]


## ACKNOWLEDGMENTS

STATE OF OREGON
                                                    } ss.          (Individuals)
COUNTY OF    KLAMATH

On this    30TH   day of    MAY              , 20   06  , before me personally appeared   SCOTT W. CHEYNE AND JANINE
M. CHEYNE, husband and wife
                                    (Name(s) of persons acknowledging)
known to me to be the same person whose name is subscribed to the foregoing instrument,  and acknowledged that he, she, or they signed and delivered the instrument as his, her, or their free and voluntary act, for the uses and purposes set forth.

OFFICIAL SEAL
ROWENA A. CHASE
NOTARY PUBLIC-OREGON
COMMISSION NO. 389571
MY COMMISSION EXPIRES MAR. 17, 2009

_____
                    ROWENA A. CHASE
NOTARY PUBLIC of and for the State of Oregon
My Commission expires: 03/17/2009


STATE OF OREGON
                                                    } ss.          (Partnership)
COUNTY OF    _____

The foregoing instrument was acknowledged before me this _____ day of _____, 20 _____ , by
_____ , Partners,
                                    (Names of acknowledging partners)
on behalf of _____ , a (n) _____ Partnership.
                    (Name of partnership)                                        (State in which partnership created)

_____
NOTARY PUBLIC of and for the State of Oregon
My Commission expires: _____

Note:  Page 6 of 6 applies to corporation, limited liability company and trust entities only, and will not be recorded for individuals or partnership entities.

Initial _____ date 5-30 06                                FSA-1927-1M OR (05-12-05) Page 5 of 6

JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

**DEFENDANTS**
Scott W. Cheyne

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Klamath
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Kathleen L. Bickers, AUSA
United States Attorney's Office, District of Oregon
1000 SW Third Ave., Suite 600, Portland, OR 97204, 503-727-1060

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | ☐ 370 Other Fraud | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☒ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1   Original Proceeding

☐ 2   Removed from State Court

☐ 3   Remanded from Appellate Court

☐ 4   Reinstated or Reopened

☐ 5   Transferred from Another District *(specify)*

☐ 6   Multidistrict Litigation - Transfer

☐ 8   Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1345
Brief description of cause:
Real Estate Mortgage Foreclosure

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____

DOCKET NUMBER _____

DATE
10/15/2018

SIGNATURE OF ATTORNEY OF RECORD
/s Kathleen L. Bickers, OSB #85151

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____